IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK DICKERSON,

                Plaintiff,

      v.

CITY OF PORTLAND; MULTNOMAH
COUNTY; MATT JACOBSEN; and JOHN
DOES 1-15,

                Defendants.

Case No. 3:19-cv-01126-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Mark Dickerson ("Dickerson"), a self-represented litigant, filed this action against the City of Portland (the "City"), Multnomah County (the "County"), John Does 1-10, who are Portland Police Bureau ("PPB") law enforcement officers (the "Officers") and supervisors, John Does 11-15, who are employees of the Multnomah County District Attorney's Office and the Multnomah County Sheriff's Office, and PPB Officer Matt Jacobsen ("Officer Jacobsen") (collectively, "Defendants"). Dickerson brings claims under 42 U.S.C. § 1983 ("Section 1983") for wrongful arrest and municipal liability, and state law claims for negligence, false arrest, and malicious prosecution. (ECF No. 1.)

PAGE 1 – OPINION AND ORDER

Currently before the Court are Defendants' motions for summary judgment. (ECF No. 34; ECF No. 38.) All parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636. For the reasons explained below, the Court grants Defendants' motions for summary judgment.

**BACKGROUND**[1]

## I.    DICKERSON'S ARREST

On October 31, 2018, a group of individuals gathered outside of the Multnomah County Courthouse near the intersection at SW 4th Avenue and SW Main Street ("the intersection") to protest the fatal police shooting of a Portland resident. (Pl.'s Am. Compl. ("FAC") ¶ 8, ECF No. 16; Decl. of Robert Simon ("Simon Decl.") ¶ 2.) The protesters were standing near the crosswalk in the middle of the intersection blocking the street to oncoming traffic. (FAC ¶ 9, Simon Decl. ¶ 3.) PPB Sergeant Sarah Taylor ("Sergeant Taylor") and Captain Robert Simon ("Captain Simon") were standing on the corner of SW 4th Avenue and SW Main Street monitoring the protest. (FAC ¶ 9; Simon Decl. ¶ 3.) Dickerson, who was driving northbound on SW 4th Avenue, proceeded through the intersection past the protesters. (FAC ¶ 10; Pl.'s Aff. Opp'n to City's Mot. ("Pl.'s Aff."), Ex. B at 4; Simon Decl. ¶ 4.) As Dickerson drove through the intersection, protesters started to bang on his truck. (Mark Dickerson Dep. ("Dickerson Dep.") 78:23-25, ECF No. 43-1; Pl.'s Aff., Ex. B at 3.) One of the protesters (referred to herein as "A.D."), stepped off the sidewalk and into the street. (Pl.'s Aff., Ex. B at 3; Dickerson Dep. 78:23-25-79:1-5.) Dickerson initially applied his brakes, but he was unable to stop his truck before hitting A.D. (Pl.'s Aff., Ex. B at 3; Dickerson Dep. 78:23-25-79:1.) A.D. began walking

---

[1] Unless otherwise noted, the following facts are either undisputed or presented in the light most favorable to Dickerson.

toward Dickerson's truck, and Dickerson drove forward again and struck A.D. with his truck a

second time. (Pl.'s Aff. ¶ 3; Dickerson Dep. 79:7-14, 80:20-25; Simon Decl. ¶ 4; Decl. of Sarah

Taylor ("Taylor Decl.") ¶ 4.)

Dickerson continued driving and eventually pulled over at SW 3rd Avenue,

approximately one block from the intersection. (Simon Decl. ¶ 5.) Captain Simon, who had

observed Dickerson hit A.D., made contact with Dickerson at his truck. (FAC ¶ 13; Simon Decl.

¶ 5.) Initially, Captain Simon told Dickerson that he was not under arrest. (Pl.'s Aff., Ex. B at 2;

Simon Decl. ¶¶ 5-6.) Dickerson offered to show Captain Simon his dash cam video, which

captured the incident, but Captain Simon declined to review the video at that time. (Pl.'s Aff.,

Ex. B at 3; FAC ¶¶ 13-14; Decl. of Caroline Turco ("Turco Decl.") ¶ 5, Ex. 4.)

Two additional officers, Officers Browning and Jacobsen, arrived at the scene and took

over the investigation from Captain Simon. (FAC ¶ 15; Decl. of Matthew Jacobsen ("Jacobsen

Decl.") ¶ 4.) Dickerson told Officer Jacobsen that he was stopped at the light on SW 4th Avenue

and SW Main Street and saw a crowd of protesters in the street. (Jacobsen Decl. ¶ 6.) Dickerson

stated that the crowd began to part, and as he proceeded through the intersection, a man jumped

in front of his truck and he slammed on his brakes. (Pl.'s Aff., Ex. B at 2-4; Jacobsen Decl. ¶ 6.)

Dickerson reported that he started to drive forward again, and that the man jumped in front of his

truck a second time. (Pl.'s Aff., Ex. B at 3; Jacobsen Decl. ¶ 7.) Dickerson stated that he tried to

stop in time to avoid hitting the man, but that his truck made contact with the individual a second

time. (Jacobsen Decl. ¶ 7; Pl.'s Aff., Ex. B at 3; *see also* Dickerson Dep. 79:7-82:10.) Officer

Jacobsen placed Dickerson under arrest for three misdemeanors: reckless driving, assault in the

fourth degree ("assault IV"), and recklessly endangering another person. (Jacobsen Decl. ¶ 12;

FAC ¶ 16.)

## II.    MULTNOMAH COUNTY DETENTION CENTER ("MCDC")

After the arrest, Officer Jacobsen transported Dickerson to MCDC where he was booked and processed. (FAC ¶ 18; Decl. of Deputy Sheriff Brandon Pedro ("Pedro Decl.") ¶ 8.) Once an arrestee is brought to MCDC, he undergoes an intake process, which includes: (1) photographing the arrestee, (2) taking his fingerprints, (3) checking for outstanding warrants or detainers, and (4) interviewing with a jail release assistance officer. (Pedro Dec. ¶¶ 5-7.) During the interview, jail staff review the arrestee's criminal history and the release criteria to determine if the arrestee is eligible for release. (Id. ¶ 6; Ex. 1.) According to jail records, Dickerson was booked into MCDC at 12:33 p.m. on October 31, 2018, and was released on his own recognizance at 4:17 p.m. that same day. (Id. ¶ 8.)

On November 1, 2018, Dickerson was charged with reckless driving and harassment. (Turco Decl., Ex. 6.) On the morning of trial, A.D., the complainant in the case, reported to the court that he was unable to be present for the entire trial due to childcare issues, and the court dismissed the case. (Turco Decl., Ex. 10 at 9-10; Ex. 5, Dep. of Jenna Plank ("Plank Dep."), 17:17-18:4.)

## III.    PROCEDURAL HISTORY

On July 19, 2019, Dickerson filed this lawsuit against the City, the County, and John Does 1-15, asserting Section 1983 claims for wrongful arrest and municipal liability, and state law claims for negligence, false arrest and imprisonment, and malicious prosecution. (Compl. ¶¶ 20-39.) On February 21, 2020, Dickerson filed an amended complaint, adding Officer Jacobsen as a defendant. (ECF No. 16.) On September 30, 2020, the County and the City moved for summary judgment on all claims.

///

///

PAGE 4 – OPINION AND ORDER

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of that party. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## DISCUSSION

## I.    THE CITY'S MOTION FOR SUMMARY JUDGMENT

The City moves for summary judgment on all claims in Dickerson's FAC. For the reasons explained below, the Court grants the City's motion.

### A.    Section 1983 Claims

#### 1.    Wrongful Arrest

Dickerson alleges that the City violated his Fourth Amendment rights by unlawfully arresting him without probable cause.[2] (FAC ¶¶ 21-24.) The City argues that it is entitled to summary judgment on this claim because Officer Jacobsen had probable cause to arrest Dickerson. (City Mot. at 8.) The Court agrees.

---

[2] In his FAC, Dickerson asserts a claim for wrongful arrest and unlawful use of force. (FAC ¶ 22.) However, in response to the City's Request for Admissions, Dickerson admits that he is not asserting an excessive force claim against the City. (*See* Turco Decl., Ex. 9 at 3.)

"Under the Fourth Amendment, a warrantless arrest requires probable cause." *U.S. v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). Probable cause to arrest exists "when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Id.* (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). In determining whether probable cause exists, courts examine the totality of the circumstances known to the officers at the time of the arrest. *U.S. v. Buckner*, 179 F.3d 834, 837 (9th Cir. 1999) ("Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime.") (citation omitted).

Claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge. *See Barry v. Fowler*, 902 F.2d 770, 773 n.5 (9th Cir. 1990) (noting that, because the defendant officer had probable cause to arrest the plaintiff for one charge, the arrest was not unconstitutional even if the officer lacked probable cause for another charge); *see also Lacy v. Cty. of Maricopa*, 631 F. Supp. 2d 1183, 1194 (D. Ariz. 2008) (collecting cases). Thus, "if there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails." *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001) (citation omitted); *see also Rodrigues v. Cty. of Hawaii*, No. 18-00027 ACK-RLP, 2018 WL 6070336, at *10 n.8 (D. Haw. Nov. 20, 2018) ("Because a claim for false arrest focuses on the validity of the arrest, not of each individual charge, the existence of probable cause for any of the charges made will cause a claim for false arrest to fail.").

"Under the collective knowledge doctrine, in determining whether probable cause exists for arrest, courts look to 'the collective knowledge of all the officers involved in the criminal

investigation.'" *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008) (quoting *U.S. v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007)). For example, in *Ramirez*, a police officer made a warrantless traffic stop based on facts communicated to him by radio. *Ramirez*, 473 F.3d at 1030. "The appellants challenged the validity of the traffic stop and argued [the officer] lacked personal knowledge of the facts purportedly giving rise to probable cause for an automobile search." *Id.* The court concluded that "where an officer (or team of officers), with direct personal knowledge of all the facts necessary to give rise to reasonable suspicion or probable cause, directs or requests that another officer, not previously involved in the investigation, conduct a stop, search or arrest[,]" the collective knowledge doctrine applies. *Id.* at 1033.

The existence of probable cause is a complete defense to a claim for wrongful arrest. *See Hutchinson v. Grant*, 796 F.2d 288, 290 (9th Cir. 1986) (holding that "a police officer has immunity if he arrests with probable cause"); *Cabrera v. Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1988) ("To prevail on his section 1983 claim for false arrest . . . [the plaintiff] would have to demonstrate that there was no probable cause to arrest him.").

The City is entitled to summary judgment on Dickerson's Fourth Amendment claim because probable cause existed to arrest Dickerson for the charge of reckless driving. Under Oregon law, "[a] person commits the offense of reckless driving if the person recklessly drives a vehicle . . . in a manner that endangers the safety of persons or property." OR. REV. STAT. (hereinafter, "O.R.S.") § 811.140(1). The term "recklessly" means:

> [A] person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

O.R.S. § 161.085(9). In establishing probable cause, the Officers relied on the following information: Captain Simon observed Dickerson drive his truck forward into A.D. two separate

times and observed that "the truck could have easily driven around [A.D.] to avoid making contact" with him (Simon Decl. ¶¶ 3-4); Sergeant Taylor, who was standing next to Captain Simon at the time of the incident, saw A.D. being "pushed off" the front of Dickerson's bumper by the truck's forward movement (Taylor Decl. ¶ 4); Captain Simon communicated what he had seen over the radio to Officer Jacobsen (Simon Decl. ¶ 5; Jacobsen Decl. ¶ 12); Officer Browning interviewed A.D., who told Officer Browning that he had been struck by Dickerson's truck at least once (Jacobsen Decl. ¶ 11); Officer Browning communicated this information to Officer Jacobsen and told Officer Jacobsen that A.D. was being evaluated by medical personnel (*id.*); Dickerson told Jacobsen that he was unable to stop in time and that he had hit A.D. with his truck. (Turco Decl., Ex. 4; *see also* Pl.'s Aff., Ex. B at 3, "Ofc. Jacobsen: 'You know if you hit anybody or anything like that?' Dickerson: 'I . . . I . . . ya. Somebody jumped right in front as I was going through!'"). Captain Simon and Sergeant Taylor's observations of the incident, coupled with Dickerson's own statements, were sufficient to support an objectively reasonable belief that Dickerson "consciously disregarded a substantial and unjustifiable risk" that his driving would result in damage to persons or property. O.R.S. § 161.085(9).

Further, Dickerson's dash cam video of the incident shows Dickerson's truck moving forward and hitting A.D. two separate times. (Turco Decl., Ex. 4.) Dickerson does not dispute that the dash cam video accurately depicts the incident, nor does he dispute that Captain Simon observed the events captured in the video in real time. (*See* Pl.'s Resp. Opp'n to City's Mot. at 6, acknowledging that "Simon was the only officer to see the entire event and he stated that 'he watched the whole thing' per the dash cam audio[.]") Based on this evidence, no reasonable juror could conclude that Officer Jacobsen lacked probable cause to arrest Dickerson for reckless driving. *See, e.g.*, *Meggs v. City of Berkeley*, 246 F. App'x 402, 402-03 (9th Cir. 2007) (finding

at the summary judgment stage in a Section 1983 action that "no reasonable jury could conclude that [an] arrest was unsupported by probable cause").

Dickerson raises several arguments for why his wrongful arrest claim should survive summary judgment. First, Dickerson argues that his constitutional rights were violated because probable cause had dissipated prior to his arrest. (Pl.'s Resp. Opp'n to City's Mot. at 23.) "It is well-established that a 'person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated.'" *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019) (quoting *U.S. v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005) (per curiam)). In *Nicholson*, the Court held that an officer's use of handcuffs to detain two teenage boys for five hours violated their Fourth Amendment rights to be free from unlawful arrest and excessive force because "it was soon apparent to the officers that the teenagers were unarmed, posed no threat to anyone, and were not engaged in any criminal activity" and therefore probable cause for their arrest had dissipated. 935 F.3d at 691.

This case is distinguishable from *Nicholson*. Here, Dickerson drove his truck into A.D. in the presence of Captain Simon. (Simon Decl. ¶ 4.) Unlike in *Nicholson*, probable cause did not dissipate during the officers' investigation. To the contrary, Dickerson told Officer Jacobsen that he was unable to stop in time before hitting A.D. with his truck, and A.D. confirmed that he was struck at least once by Dickerson. (*See* Pl.'s Aff., Ex. B at 3; Jacobsen Decl. ¶ 11; Turco Decl., Ex. 4.)

Dickerson also argues that at least three genuine issues of material fact exist which preclude summary judgment in favor of the City. First, Dickerson argues that inconsistencies between Officer Jacobsen and Sergeant Taylor's testimony in their declarations and their statements captured by the dash cam video reflect factual disputes that must be decided at trial.

(*See* Pl.'s Resp. Opp'n to City's Mot. at 9-12, arguing that Captain Simon's testimony that Dickerson appeared "very excited" is contradicted by the dash cam video, which shows that Dickerson was "rationally alert yet calm," and Sergeant Taylor's testimony that she observed A.D. being "pushed off" the front bumper by the truck's forward movement is contradicted by the dash cam video, which shows A.D. "walk[ing] away on his own free will"). These alleged discrepancies in the Officers' testimony are not sufficiently material to negate probable cause or preclude summary judgment in the City's favor.[3]

Second, Dickerson points to a letter he received from his insurance company denying A.D.'s bodily injury claim because A.D. caused the accident when he "intentionally stepped into the path of Mr. Dickerson's vehicle." (Pl.'s Resp. Opp'n to City's Mot., Ex. A.) Dickerson appears to seek to demonstrate his innocence of the charges for which he was arrested. (*See* *id.* at 18-19.) However, the issue is not whether Dickerson is guilty of the charge, but whether there was probable cause to believe he had committed any of the offenses of arrest. *See* *Edgerly v. City & Cty. of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010) ("[P]robable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense[.]"); *Egolf v. Witmer*, 526 F.3d 104, 108 n.8 (3d Cir. 2008) ("[P]robable cause need only exist as to *any* offense that could be charged under the circumstances."). The insurance company's denial of coverage does not support a conclusion that no probable cause existed to arrest Dickerson for reckless driving. *See* *Davage v. City of Eugene*, No. 04-6321-HO, 2007 WL 2007979, at *18 (D. Or. July 6, 2007) ("[P]laintiffs appear to seek to prove their innocence and

---

[3] In addition, the dash cam video contradicts Dickerson's version of events as it clearly shows Dickerson's truck hitting A.D. twice. *See* *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (concluding that where a videotape that captures an event "blatantly contradicts the plaintiff's version of events so that no reasonable jury could believe it, the court should not adopt that version of the facts for purposes of ruling on a summary judgment motion").

to explain away the evidence that supports probable cause. The issue is not whether the plaintiffs actually are guilty of a marijuana grow, but whether there was probable cause to believe they had such a grow. The [evidence], while perhaps probative of guilt, [is] not material or necessary to a finding of probable cause.").

Finally, Dickerson asserts that the officers present at the protest should have foreseen that an accident would occur. Specifically, Dickerson argues that "[a] reasonable person would consider it foreseeable . . . that a group of already unruly and angry protestors may purposely cause an incident to an unwilling and innocent victim." (Pl.'s Resp. Opp'n. to City's Mot. at 15.) Dickerson's argument has no bearing on whether officers had probable cause to arrest him for reckless driving.

Based on the undisputed evidence, probable cause to believe Dickerson committed the crime of reckless driving defeats his Fourth Amendment claim based on his arrest. Accordingly, the Court enters summary judgment in favor of the City on Dickerson's claim.

### 2. *Monell* Liability

Dickerson also asserts a *Monell* claim against the City. Dickerson alleges that the City: (1) "failed to train and discipline its officers"; (2) lacks "adequate supervisory review of incidents where officers and others violate [] Fourth Amendment rights"; and (3) that PPB officers engage in an unlawful pattern and practice of "violating the Fourth Amendment rights of innocent citizens who become caught up in public protests through a practice of arrest, punishment, and targeting." (FAC ¶¶ 27-29; *see also* Mark Dickerson Depo. ("Dickerson Depo.") 115:11-18, stating that PPB Officers "made a conscious decision to disregard the law, disregard what is standard protocol, and allow [protestors] to do whatever they wanted[,] whether it's attack people or direct traffic or put someone in harm's way . . . they turned a blind eye to it").

To prevail on a *Monell* claim under Section 1983, a plaintiff must show that a municipal custom or policy caused the violation of his constitutional rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). "[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to: (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton v. City of Santa Maria*, 915 F.3d 592, 602-03 (9th Cir. 2019).

"To establish *Monell* liability, Plaintiffs must allege that: (1) they were deprived of a constitutional right; (2) the municipality had a policy, custom, or practice; (3) the policy, custom, or practice amounted to deliberate indifference of the plaintiffs' constitutional rights; and (4) the policy, custom, or practice was the 'moving force' behind the constitutional violation." *Cantu v. City of Portland*, No. 3:19-cv-01606-SB, 2020 WL 2952972, at *3 (D. Or. June 3, 2020) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)). If no constitutional violation occurred, then a municipal liability claim necessarily fails. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that a *Monell* claim cannot survive without an underlying constitutional violation).

The threshold question in determining whether Dickerson can establish *Monell* liability is whether a constitutional violation occurred here. As explained above, PPB officers did not violate the Fourth Amendment when they arrested Dickerson. Because no constitutional violation occurred, Dickerson's *Monell* claim fails as a matter of law. *Id.* at 799.

However, even if the officers had violated Dickerson's Fourth Amendment rights, his *Monell* claim fails because Dickerson has failed to produce sufficient evidence to create a question of material fact about whether an unlawful pattern or practice exists and whether the

City was deliberately indifferent in its failure to train, supervise, and discipline its officers. On both grounds, the Court grants summary judgement to the City on Dickerson's *Monell* claim.

### a.    Unlawful Pattern or Practice

Dickerson alleges that PPB officers did not follow their own "protocol" by failing to arrest protestors that had violated the law by gathering in the street and blocking traffic. (Pl.'s Resp. Opp'n to City's Mot. at 25-27.) Specifically, Dickerson claims that PPB officers engaged in a pattern of disregarding their own policies outlined in the PPB Policy Manual and Portland Police Charter, which require officers to "uphold[] the civil rights of all individuals, protect human life and property, and maintain[] civil order," and to "[r]emove nuisances existing in streets, roads, public places, and highways[.]" (*Id.* at 24.)

"[A] local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)). Accordingly, to hold a municipality liable, a plaintiff must show that the defendant's policy amounted to deliberate indifference to the plaintiff's constitutional right and that the policy was the moving force behind the constitutional violation. *Horton*, 915 F.3d at 603 ("A plaintiff must show '*deliberate* action attributable to the municipality [that] directly caused a deprivation of federal rights.'") (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 415 (1997)).

Dickerson has not offered any evidence that PPB's Manual or the Portland Police Charter amount to deliberate indifference or were a moving force behind a constitutional violation. Rather, Dickerson claims that the PPB Officers' failure to adhere to their own policies violated his constitutional rights. Allegations that the officers acted contrary to existing PPB policy cannot support a *Monell* claim. *See Cavanaugh v. Cty. of San Diego*, No. 3:18-cv-02557-BEN-LL, 2020 WL 6703592, at *39 (S.D. Cal. Nov. 12, 2020) (dismissing the plaintiff's claim

because "the policy itself could not be unconstitutional if the alleged wrongful conduct involved violating the policy"). Accordingly, Dickerson failed to meet his burden to establish a *Monell* claim here.

### b.    Failure to Train, Supervise, or Discipline

In his complaint, Dickerson alleges that the City "failed to train and discipline its officers, including Lt. Simon and Defendant Jacobsen in following constitutional norms" (FAC ¶ 29), and that the City "do[es] not have adequate supervisory review of incidents where officers and others violate [] Fourth Amendment rights." (FAC ¶ 28.) Inadequate training can result in Section 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom police come into contact." *City of Canton v. Harris*, 489 U.S. 379, 388 (1989). To establish that level of inadequacy, plaintiffs "must demonstrate a conscious or deliberate choice" by the City not to train its officers by demonstrating that the City "disregarded the known or obvious consequence that a particular omission in their training program would cause [City] employees to violate citizens' constitutional rights." *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1158-59 (9th Cir. 2014) (quotation marks and citations omitted).

Dickerson has not presented any evidence that the City was deliberately indifferent to the need to train and supervise its officers. Indeed, the summary judgment record lacks any information about the City's training, supervisory, or disciplinary decisions. To the extent that Dickerson alleges *Monell* liability based on the City's failure to train or supervise its officers, the Court grants summary judgment in favor of the City. *See Elifritz v. Fender*, 460 F. Supp. 3d 1088, 1119-20 (D. Or. 2020) (granting summary judgment in favor of the City of Portland because the plaintiff "offered no evidence that PPB was deliberately indifferent to the need to train and supervise its officers" and the plaintiff "has not pointed to any category of inadequate training or explained how the training that PPB gave its officers fell so short of adequately

protecting the constitutional rights of the City's residents that it amounted to deliberate indifference").

Dickerson may also establish liability under a failure to discipline theory by showing "repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992); *see also Scalia v. Cty. of Kern*, 308 F. Supp. 3d 1064, 1078 (E.D. Cal. Apr. 10, 2018) ("In order to show that a failure to train amounts to deliberate indifference, it is 'ordinarily necessary' to demonstrate 'a pattern of similar constitutional violations by untrained employees.'" (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011))). There is no evidence in the record that a pattern of similar constitutional violations has occurred by untrained employees or that PPB has allowed any officer to commit repeated constitutional violations without reprimand or disciplinary action. Thus, Dickerson's failure to discipline theory does not support a *Monell* claim against the City.

### c.    Conclusion

Based on the record before the Court, Dickerson has not presented a genuine issue of material fact that would give rise to municipal liability, and therefore the Court enters summary judgment for the City. *See Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1254 (9th Cir. 2010), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (granting summary judgment for defendants on the plaintiff's *Monell* claim where the plaintiff "failed to adduce sufficient evidence to create a genuine issue of material fact as to whether [the plaintiff's injury] was due to a long-standing custom or practice, an act of omission that amounted to deliberate indifference, or actions the County adopted as policy when it failed to discipline its employees").

///

///

PAGE 15 – OPINION AND ORDER

B.    **State Law Claims**

Dickerson alleges Oregon state law claims for negligence and false arrest. (FAC ¶¶ 33-35.) Under the Oregon Tort Claims Act, actions against public employees for torts committed in the course of employment must be brought against a public body. O.R.S. § 30.265(2). Accordingly, Dickerson brings his state law claims against the City based on the PPB Officers' conduct during the course of their employment. As explained below, the Court grants summary judgment in favor of the City.

1.    **Negligence**

Dickerson alleges a negligence claim based on the Officers' conduct during his arrest. In particular, Dickerson alleges that the City: (1) "created an unnecessary and unreasonable risk of harm against all present"; and (2) that "[i]t was foreseeable that [his] arrest at a protest event being actively covered by the media would result in injury to his personal and professional reputation." (FAC ¶ 32.)

To establish a negligence claim under Oregon law, a plaintiff must prove the following elements: "(1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiffs injury was within the general type of potential incidents and injuries that made defendant's conduct negligent." *Son v. Ashland Cmty. Healthcare Servs.*, 239 Or. App. 495, 505 (2010) (citation omitted).

"[A]s a matter of principle, the court recognizes that a plaintiff may allege negligence as a basis for recovery separate from § 1983 for acts arising in the Fourth Amendment search and seizure context. The negligence claim, however, should not be founded on the same facts that give rise to the § 1983 claim." *Gregory v. City of Newberg*, No. 3:15-CV-00473-BR, 2015 WL

PAGE 16 – OPINION AND ORDER

5577755, at *7-8 (D. Or. Sept. 21, 2015) (quoting *Shilo v. City of Portland*, No. 04-130-AS, 2005 WL 3157563, at *1 (D. Or. Nov. 22, 2005)).

The City is entitled to summary judgment on Dickerson's negligence claim. Courts in this district have consistently held that negligence claims are barred from proceeding to trial when the negligence claim is based on the same operative facts as the Section 1983 claim. *See Daley v. McKoy*, No. 3:17-cv-00718-BR, 2018 WL 2470984, at *6-7 (D. Or. May 31, 2018); *Rodrigues v. Jackson Cty.*, No. 1:13-CV-01589-CL, 2015 WL 404577, at *3-4 (D. Or. Jan. 29, 2015); *Frank v. Cascade Healthcare Cmty., Inc.*, No. 6:11-cv-06402-AA, 2013 WL 867387, at *5 n.5 (D. Or. Mar. 6, 2013); *Woods v. Gutierrez*, No. 3:11-CV-01082-BR, 2012 WL 6203170, at *12 (D. Or. Dec. 12, 2012); *Barringer v. Clackamas Cty.*, No. CV 09-068-AC, 2010 WL 5349206, at *9 (D. Or. Nov. 22, 2010); *Hadley v. City of Beaverton*, No. CV-09-022-ST, 2010 WL 1257609, at *14 (D. Or. Feb. 16, 2010); *Whitfield v. Tri-Metro. Transp. Dist.*, No. 06-1655-HA, 2009 WL 839484, at *11 (D. Or. Mar. 30, 2009); *Saberi v. City of Portland*, No. CV 04-1396-MO, 2006 WL 2707995, at *4 (D. Or. Sept. 18, 2006).

Although at least one decision in this district has challenged this long-standing rule, *see Johns v. City of Eugene*, No. 6:16-cv-00907-AA, 2018 WL 634519 (D. Or. Jan. 30, 2018), *rev'd on other grounds*, 771 F. App'x 739 (9th Cir. 2019), the Court concludes that the facts of the present case align more closely with the principles outlined in *Shilo* and its progeny than *Johns*. In *Johns*, the plaintiff brought claims under Section 1983 for violation of his Fourth Amendment rights and a state law claim for negligence stemming from his arrest by city police officers. 2018 WL 634519, at *1. The court denied the defendants' motion for summary judgment as to the plaintiff's Fourth Amendment claim because it found that there were "substantial disputes of material fact that [were] determinative in establishing the existence of probable cause." *Id.* at *5.

Although the court concluded that the plaintiff's Section 1983 claim did not bar the negligence claim even though both claims were based on the same set of facts, the court ultimately denied the defendants' motion for summary judgment on the negligence claim because it found that there was a genuine dispute of material fact as to "whether the defendant's conduct unreasonably caused a foreseeable risk of harm, [which] track[s] the Fourth Amendment" and "requires the officers' actions to be objectively reasonable." *Id.* at *14.

Here, Dickerson's negligence claim is based on the same facts as his related Section 1983 claim and both claims turn on whether it was reasonable for the officers to arrest him. Because the Court has determined that the officers had probable cause to arrest Dickerson, Dickerson may not maintain a separate negligence claim.

Even if the Court determined that Dickerson alleged unique facts in support of his negligence claim against the City to allow that claim to proceed here, no reasonable juror could conclude that it was the City's negligence that caused Dickerson to drive in such a manner that he struck a pedestrian, resulting in his arrest. Nor could a reasonable juror conclude that the City should not have arrested Dickerson for reckless driving because it had a duty to protect him from negative media coverage.

Accordingly, the City is entitled to summary judgment on Dickerson's negligence claim as a matter of law.

### 2.    False Arrest

Dickerson also asserts a claim for false arrest and alleges that he was arrested without a warrant or probable cause. (FAC ¶¶ 36-38.) "Wrongful arrest and wrongful imprisonment have the same elements under Oregon law." *Wagoner v. City of Portland*, No. 3:14-cv-2063-AC, 2017 WL 2369399, at *5 (D. Or. May 31, 2017) (citing *Hiber v. Creditors Collection Serv.*, 154 Or. App. 408, 413 (1998) ("The basic principles that apply to an action for false imprisonment (also

PAGE 18 – OPINION AND ORDER

called false arrest) are familiar and well settled.")). To state a false arrest claim under Oregon law, the plaintiff must prove the following elements: "(1) the defendant confined the plaintiff, (2) the confinement was intentional, (3) the plaintiff was aware of the confinement, and (4) the confinement was unlawful." *Daley*, 2018 WL 2470984, at *5 (citing *Hiber*, 154 Or. App. at 413).

Dickerson's false arrest claim fails because his confinement was not unlawful. "Under Oregon law, a claim for false arrest is defeated when an officer has probable cause to make an arrest." *Id.* at *6 (citing *Miller v. Columbia Cty.*, 282 Or. App. 348, 357-58 (2016)). "The analysis of probable cause under Oregon law is the same as the analysis under federal law." *Id.* As noted, the Court concludes that Jacobsen had probable cause to arrest Dickerson. Accordingly, the City is entitled to summary judgment on Dickerson's false arrest claim.

## II.    THE COUNTY'S MOTION FOR SUMMARY JUDGMENT

The County moves for summary judgment on all claims in Dickerson's FAC. For the reasons set forth below, the Court grants the County's motion.

### A.    Section 1983 Claims

#### 1.    Fourth Amendment Claim

Dickerson alleges that he was unlawfully seized in violation of the Fourth Amendment when he was booked, processed, and detained at MCDC following his arrest. (FAC ¶¶ 21-24.) Dickerson does not challenge the constitutionality of Oregon's booking procedures. Rather, Dickerson asserts that probable cause had dissipated prior to his arrest and therefore the County violated his Fourth Amendment rights by continuing to detain him after his initial arrest. (Pl.'s Resp. Opp'n to County's Mot. at 15.) As explained above, the Court concludes that probable

cause existed to arrest Dickerson for the crime of reckless driving and therefore Dickerson's claim against the County fails.

Further, Dickerson presents no evidence that the County unreasonably extended his detention beyond the permitted time period for processing and booking. *See Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 53-54 (1991) ("[T]he Fourth Amendment does not compel an immediate determination of probable cause upon completing the administrative steps incident to arrest"). Indeed, the record demonstrates that Dickerson arrived at MCDC at 12:33 p.m., jail staff took his photo, fingerprints, and interviewed him pursuant to County policy, and he was released on his own recognizance at approximately 4:17 p.m. (Pedro Decl. ¶ 8.) Dickerson adduces no evidence that the foregoing administrative steps unreasonably extended his detention in violation of his constitutional rights. *Cf. Higbee v. City of San Diego*, 911 F.2d 377, 380 (9th Cir. 1990) (holding that the plaintiffs were "taken to jail to be booked and processed in the customary manner, a process which fully complies with both the Fourth and Fourteenth Amendments" and thus "[the] plaintiffs had no constitutional right to be released . . . without being booked or posting bail once lawfully arrested"). Accordingly, the County is entitled to summary judgment on Dickerson's Fourth Amendment claim.

### 2. *Monell* Liability

Dickerson asserts a *Monell* claim against the County and John Does 11-15. (FAC ¶¶ 28, 30-31.) As discussed above, a municipality may be liable for a constitutional violation pursuant to: (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker. *See Horton*, 915 F.3d at 602-03.

Dickerson fails to establish a basis for *Monell* liability against the County under any of the above-mentioned theories. First, Dickerson has failed to identify a County policy that caused any alleged constitutional deprivation. In addition, Dickerson has not offered any evidence to

support a policy or custom claim. Although Dickerson alleges in his complaint that the County and John Does 11-15 "failed to train and discipline its employees in following constitutional norms," there is no evidence in the record to support that allegation. (FAC ¶ 30.) Finally, Dickerson does not allege or produce evidence that an official policymaker acted with respect to Dickerson's booking, processing, and detention at MCDC. Accordingly, the County is entitled to summary judgment on Dickerson's *Monell* claim.

### B.      State Law Claims

Dickerson alleges that the County is liable for negligence, false imprisonment, and malicious prosecution. For the following reasons, the Court grants summary judgment in favor the County on all three claims.

### 1.      Negligence

In his negligence claim against the County, Dickerson alleges that he was "subjected to fear, intimidation, humiliation, and public embarrassment when his name and photograph were publicized by employees of [MCDC]." (FAC ¶ 20.) Dickerson's claim against the County fails because he has not presented any evidence that the County or its employees acted negligently in booking and processing Dickerson at MCDC following his arrest. Based on the record before the Court, no reasonable juror could find that the County acted negligently when it carried out the administrative steps of booking, processing, and detaining Dickerson at MCDC following his arrest by PPB officers, and therefore the Court enters summary judgment for the County.

### 2.      False Arrest and Imprisonment

The County also moves for summary judgment on Dickerson's false arrest and imprisonment claim. However, Dickerson does not appear to plead a false arrest or imprisonment claim against the County. (*See* FAC ¶¶ 36-38.) In any event, to the extent that Dickerson alleges a false arrest or imprisonment claim against the County, he has failed to demonstrate that the

PAGE 21 – OPINION AND ORDER

County's confinement of him at MCDC was unlawful. Accordingly, Dickerson's claim fails as a matter of law.

### 3.    Malicious Prosecution

Dickerson asserts a claim for malicious prosecution, based on the criminal charges issued against him for reckless driving and harassment. (FAC ¶¶ 39-41.) The elements of malicious prosecution are: "(1) the institution or continuation of the original criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable cause for the proceeding; and (6) injury or damage because of the prosecution." *Blandino v. Fischel*, 179 Or. App. 185, 190 (2002) (citation omitted).

Dickerson's malicious prosecution claim fails for at least two reasons. First, it is well established that district attorneys are officers of the state of Oregon when carrying out their duties as prosecutors. *See, e.g.*, *Thomas v. Oregon*, No. 3:11-cv-1560-ST, 2012 WL 1029139, at *2 (D. Or. Jan. 30, 2012), *report and recommendation adopted*, 2012 WL 1029426 (D. Or. Mar. 26, 2012) ("Under Oregon law, district attorneys are legal officers of the state."); *State v. Clark*, 291 Or. 231, 245 (1981) ("District attorneys are state officers applying statewide, not local law."). Accordingly, prosecutors within the district attorney's office are state actors, not county actors, and therefore the County cannot be held liable for their actions. *See Ouma v. Clackamas Cty.*, No. 3:12-cv-01465-HZ, 2014 WL 1874051, at *3 (D. Or. May 7, 2014) (concluding that "[t]he District Attorney's Office is the arm of the State, not the county" and therefore "Clackamas County cannot be held responsible for actions by the District Attorney's Office"). Similarly, in *Foster v. Flaherty*, the Ninth Circuit affirmed dismissal of a suit brought by terminated deputy district attorneys against Deschutes County, Oregon. 621 F. App'x 463, 463, (9th Cir. 2015). The court held that "[u]nder Oregon law . . . DDAs are State, not County,

PAGE 22 – OPINION AND ORDER

employees" and thus the County could not be held liable for the deputy district attorneys'

terminations. *Id.* at 464. Accordingly, Dickerson's malicious prosecution claim against the

County fails as a matter of law.

      Second, the Court has already determined that the PPB officers had probable cause to

arrest Dickerson for reckless driving. The existence of probable cause negates an element of

Dickerson's claim. *See Blandino*, 179 Or. App. at 190 (identifying a lack of probable cause as an

element of a malicious prosecution claim under Oregon law); *Hartley v. State Water Res. Dep't*,

77 Or. App. 517, 523 (1986) (explaining that, to prevail on a claim for malicious prosecution, the

"plaintiff must prove that the defendant did not have probable cause to initiate the criminal

proceeding"). Thus, the County is entitled to summary judgment on Dickerson's malicious

prosecution claim. *See Adidas-Am., Inc. v. Payless ShoeSource, Inc.*, 546 F. Supp. 2d 1029, 1044

(D. Or. 2008) ("[S]ummary judgment must be entered against a party who fails to make a

showing sufficient to establish the existence of an essential element to that party's case, and on

which that party will bear the burden of proof at trial.").

## CONCLUSION

      For the reasons stated, the Court GRANTS the County's motion for summary judgment

(ECF No. 34) and GRANTS the City's motion for summary judgment (ECF No. 38). The Court

DENIES AS MOOT the City's Motion to Compel the Production of Documents (ECF No. 45).

      DATED this 16th day of December, 2020.

                                 HON. STACIE F. BECKERMAN
                                 United States Magistrate Judge